UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BRANDON TEGTMEIER, on behalf of himself and others similarly situated, | Case No.: _____ |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| | **AND** |
| PJ IOWA, L.C., | **JURY DEMAND** |
| Defendant. | |

Plaintiff Brandon Tegtmeier, individually and on behalf of all other similarly situated delivery drivers, for his Complaint against Defendant PJ Iowa, L.C., alleges as follows:

1.      Defendant operates approximately 26 Papa John's franchise stores in Iowa, Illinois and South Dakota.  Defendant employs delivery drivers who spend at least 20% of their work time performing non-tipped duties. But, Defendant pays its delivery drivers a sub-minimum tipped wage for *all* of their work time.

2.      Defendant's delivery drivers drive their own automobiles to deliver pizza and other food items to Defendant's customers. Instead of reimbursing its delivery drivers for the reasonably approximate costs of the business use of their vehicles, Defendant utilizes a flawed method to determine reimbursement rates that provides such an unreasonably low rate beneath any reasonable approximation of the expenses they incur that the drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage during some or all workweeks and cause Defendant's Iowa drivers' wages to fall below the Iowa minimum wages during some or all work weeks.

3.      Defendant also requires its non-supervisory employees to pay for their own uniform items including Papa John's distinctive logoed shirts, jackets and hats and requires its delivery drivers to pay to obtain their own driving records.  Such charges further reduce their net wages below the minimum wage.

4.      Plaintiff Brandon Tegtmeier brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Iowa Wage Payment Collection Law ("IWPCL"), Iowa Code § 91A.1 *et seq.,* to recover unpaid wages owed to himself and similarly situated delivery drivers employed by Defendant.

## Jurisdiction and Venue

5.      The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (pendent claims).

6.      Venue in this District is proper under 28 U.S.C. § 1391 because Defendant maintains its principal place of business in this District, it operates Papa John's franchise stores in this district,  and a substantial part of the events giving rise to the claim herein occurred in this District.

## Parties

7.      Defendant PJ Iowa, LC is an Iowa limited liability company that maintains its principal place of business in the Central Division of this District and operates Papa John's franchise stores in the Central Division of this District.

8.      Plaintiff Brandon Tegtmeier resides within this District, and he was employed by Defendant as a delivery driver from approximately January 2014 to October 2014 at its Papa John's

store in Davenport, Iowa, which is located within this District.  Mr. Tegtmeier's consent to bring this action pursuant to 29 U.S.C. § 216(b) is attached hereto as "Exhibit 1."

## General Allegations

### Defendant's Business

9.      Defendant owns and operates at approximately 26 Papa John's franchise stores in Iowa, Illinois and South Dakota.

10.     Defendant's Papa John's stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

11.     Defendant's delivery drivers also spend more than 20% of their work time in their pizza shops performing non-tipped duties that are routinely assigned, such as answering telephones, preparing food orders, preparing ingredients, folding pizza boxes, washing dishes and cleaning.

### Defendant's Pay Practices

12.     Defendant has paid its delivery drivers sub-minimum tipped wages of approximately $5.50 per hour for *all* their work time, including all time the delivery drivers spent performing non-tipped duties.

### Defendant's Flawed Reimbursement Policy

13.     Defendant requires its delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

14.     Defendant's delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizzas for the primary benefit of Defendant.

15.     Defendant's delivery driver reimbursement policy reimburses drivers on a per-shift basis, but given the distance of the average delivery the per-shift reimbursement equates to a per mile rate far below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of Defendant's delivery drivers.

16.     The result of Defendant's delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of its drivers' automobile expenses.

17.     During the applicable FLSA limitations period, the IRS business mileage reimbursement rate ranged between $.555 and $.575 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the American Automobile Association ("AAA"), have determined that the average cost of owning and operating a vehicle ranged between $.585 and $.608 per mile during the same years for drivers who drive a sedan 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

18.     The driving conditions associated with the pizza delivery business cause more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. Defendant's delivery drivers further experience lower gas mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

19.     Defendant's reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their

vehicle, and thus Defendant uniformly fails to reimburse its delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for Defendant's benefit.

20.     Defendant's systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendant such that the hourly wages they pay to Plaintiff and Defendant's other delivery drivers are not paid free and clear of all outstanding obligations to Defendant.

21.     Defendant fails to reasonably approximate the amount of its drivers' automobile expenses to such an extent that its drivers' net wages are diminished beneath the federal minimum wage requirements.

22.     In sum, Defendant's reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

### *Defendant's Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations*

23.     Regardless of the precise amount of the reimbursement at any given point in time, Defendant's reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

24.     Plaintiff drove a 2002 Ford Windstar and a 2006 Toyota Corolla to deliver Defendant's pizzas and other food products.

25.     Defendant paid Plaintiff Tegtmeier $5.50 per hour during his employment, plus a purported tip credit applicable to all of his work time.

26.     The federal and Iowa minimum wages have been $7.25 per hour since July 24, 2009.

27.     During Plaintiff's employment by Defendant, the per-shift reimbursement rate at the store where Plaintiff worked was $5.00.

28.     During his employment with Defendant, Plaintiff averaged about 12 deliveries per shift.

29.     During his employment with Defendant, Plaintiff experienced an average round-trip delivery distance of at least 5 miles per delivery.

30.     Thus, Defendant's average effective reimbursement rate for Plaintiff was approximately $.083 per mile ($5.00 reimbursement rate per shift / 12 average deliveries per shift / 5 average miles per delivery) or less.

31.     During this same time period, the IRS business mileage reimbursement rate was $.56 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. Using the IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased Plaintiff's net wages by approximately $.477 per mile ($.56 - $.083). Considering Plaintiff's estimated average of about 5 miles per delivery, Defendant under-reimbursed him about $2.385 per delivery ($.477 per mile x 5 miles).

32.     Defendant did not ask Plaintiff to track his actual automobile expenses, nor is Plaintiff an expert in the field of calculating the cost of automobile usage. However, Plaintiff's actual automobile expenses were at the very least $.36 per mile during the time he drove his 2006 Toyota Corolla on the job.  Using even this conservative under-estimate of Plaintiff's actual expenses, as opposed to the applicable IRS rate, every mile driven on the job decreased his net wages by about $.277 ($.36 - $.083), or $1.385 ($.277 x 5 miles) per delivery.

33.     During his employment by Defendant, Plaintiff typically averaged approximately 2 deliveries per hour.

34.     Thus, depending on whether Defendant's reimbursement rate is compared to the IRS rate or to his conservative estimate of the least cost-per mile, Plaintiff consistently "kicked back" to Defendant between approximately $2.77 per hour ($1.385 per delivery x 2 deliveries per hour) and $4.77 ($2.385 per delivery x 2 deliveries per hour), for an effective 2014 hourly wage rate (assuming for this calculation only that Defendant lawfully invoked and administered its purported tip credit) of about $2.48 ($7.25 per hour - $4.77 kickback) to $4.48 ($7.25 per hour - $2.77 kickback).

35.     All of Defendant's delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable federal or state minimum wage before deducting unreimbursed business expenses.

36.     Because Defendant paid its drivers a gross hourly wage at precisely, or at least very close to, the federal and state minimum wage (assuming for this purpose only that Defendant's tip credit was lawfully invoked and administered), and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendant an amount sufficient to cause minimum wage violations.

37.     While the amount of Defendant's actual reimbursements per mile may vary over time, Defendant is relying on the same flawed policy and methodology with respect to all delivery drivers at all of its other Papa John's stores. Thus, although reimbursement amounts may differ somewhat by time or region, the amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

38.     Defendant's low reimbursement rates were a frequent complaint of at least some of Defendant's delivery drivers, including Plaintiff, yet Defendant continued to reimburse at a rate much less than any reasonable approximation of delivery drivers' automobile expenses.

39.     The net effect of Defendant's flawed reimbursement policy is that it willfully fails to pay the federal minimum wage to its delivery drivers. Defendant thereby enjoys ill-gained profits at the expense of its employees.

### *Costs of Uniforms*

40.     Defendant requires its non-supervisory employees to wear uniforms on the job in clean and presentable condition, including Papa John's distinctive logoed shirts, jackets and hats, so that those employees reflect the desired company branding and image.

41.     Defendant requires its non-supervisory employees to purchase their own Papa John's logoed shirts, jackets and hats from Defendant through payroll deductions.

42.     During his employment, Plaintiff purchased a Papa John's logoed shirt from Defendant for approximately $10.00, purchased a Papa John's logoed jacket from Defendant for approximately $20.00 to $25.00, and purchased a Papa John's logoed hat from Defendant for approximately $5.00.

43.     Defendant has similarly charged its other non-supervisory employees for such uniform items.

44.     Defendant has not reimbursed its non-supervisory employees for the purchase cost of their uniform items.

45.     Because Plaintiff was paid exactly the minimum wage (assuming for this purpose that Defendant lawfully invoked and administered its purported tip credit), before deducting the purchase price of the uniform items, the cost of those uniform items caused him to receive

subminimum net wages (*e.g.,* $7.25 minimum wage nominally paid x 40 hours per week = $290.00 total wages nominally paid – $10.00 cost of one Papa John's logoed shirt = $280.00 net pay received / 40 hours worked = $7.00 per hour subminimum net wage).

46.    On information and belief, all of Defendant's non-supervisory employees had similar experiences to those of Plaintiff. They were subject to the same or substantially similar charges for uniform items (assuming for this purpose only that Defendant lawfully invoked and administered its purported tip credit), they were paid at or near the minimum wage before deducting the cost of uniforms, and Defendant has not reimbursed them for the cost of their uniforms.

### *Cost of Driving Records*

47.    Defendant has required Plaintiff and its other delivery drivers to pay for the cost of their driving records as a condition of obtaining and performing their jobs.

48.    During his employment, Plaintiff purchased his driving record for approximately $25.00.

49.    Because Plaintiff was paid exactly the minimum wage (assuming for this purpose that Defendant lawfully invoked and administered its purported tip credit), before deducting the purchase price of his driving record, the cost of that driving record caused him to receive subminimum net wages (*e.g.,* $7.25 minimum wage nominally paid x 40 hours per week = $290.00 total wages nominally paid – $25.00 cost of driving record = $265.00 net pay received / 40 hours worked = $6.625 per hour subminimum net wage).

50.    On information and belief, all of Defendant's delivery drivers had similar experiences to those of Plaintiff. They all incurred the same or substantially similar charges for obtaining their driving records, they were paid at or near the minimum wage before deducting the

cost of their driving records (assuming for this purpose only that Defendant lawfully invoked and administered its purported tip credit), and Defendant has not reimbursed them for the cost of obtaining their driving records.

## Class and Collective Action Allegations

### *FLSA Collective Action Allegations*

51.     Plaintiff brings Counts I through III under the FLSA as an "opt-in" collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

52.     The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

53.     Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging Defendant's practice of failing to pay employees federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendant's records, and potential class members may be notified of the pendency of this action via mail or e-mail.

54.     Plaintiff and all of Defendant's delivery drivers are similarly situated in that:

a.      They have worked as delivery drivers for Defendant delivering pizza and other food items to Defendant's customers;

b.      They have spent more than 20% of their work time performing non-tipped duties that are routinely assigned;

c.      They have been paid a similar sub-minimum tipped wage for all of their work time, including time spent performing non-tipped duties;

d.      They have delivered pizza and food items using automobiles not owned or maintained by Defendant;

e.   Defendant required them to maintain these automobiles in a safe, legally-operable, and insured condition;

f.   They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of Defendant;

g.   They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

h.   They were subject to the same pay policies and practices of Defendant;

i.   They were subject to the same delivery driver reimbursement policy that underestimates automobile expenses, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

j.   They were reimbursed similar set amounts of automobile expenses per shift; and

k.   They were required to incur the same or similar charged to obtain their driving records.

55.   Plaintiff and all of Defendant's non-supervisory employees are similarly situated in that:

a.   They have been paid similar wages rates (assuming for this purpose that Defendant lawfully invoked and administered its purported tip credit).

b.   They were required to incur the same or similar charges for purchase of uniform items.

### *Delivery Driver Class Allegations*

56.   Plaintiff brings Count IV as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and as the Class Representatives of the following persons (the "Delivery Driver Class"):

> All current and former delivery drivers employed by Defendant in the State of Iowa since the date two years preceding the filing of this Complaint.

57.     The state law claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the Delivery Driver Class.

58.     Plaintiff's state law claim satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

59.     The Delivery Driver Class satisfies the numerosity standard as it consists of at least hundreds of persons who are geographically dispersed and, therefore, joinder of all members of the Delivery Driver Class in a single action is impracticable.

60.     Questions of fact and law common to the Delivery Driver Class predominate over any questions affecting only individual members. The questions of law and fact common to the Delivery Driver Class arising from Defendant's actions include, without limitation:

a.     Whether Defendant failed to pay wages to members of the Delivery Driver Class as required by the IWPCL;

b.     Whether Defendant's failure to pay wages was "intentional" within the meaning of the IWPCL;

c.     Whether Defendant's delivery drivers spent at least 20% of their work time performing non-tipped duties that were routinely assigned;

d.     Whether Defendant's paid its delivery drivers sub-minimum wages for time they spend performing non-tipped duties that were routinely assigned;

e.     Whether Defendant failed to reasonably reimburse members of the Delivery Driver Class for using its own vehicles to deliver Defendant's pizzas and other food items;

f.     Whether Defendant's formula and / or methodology used to calculate the payment of reimbursement for vehicle expenses resulted in unreasonable under-reimbursement of the members of the Delivery Driver Class; and

g.     Whether Defendant failed to keep accurate records of deductions from Delivery Driver Class members' wages in violation of Iowa law.

61.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

62.    Plaintiff's claim is typical of those of the Delivery Driver Class in that:

a.     Plaintiff and the Delivery Driver Class have worked as delivery drivers for Defendant delivering pizza and other food items to Defendant's customers;

b.     Plaintiff and the Delivery Driver Class have spent at least 20% of their work time performing non-tipped duties;

c.     Defendant has paid Plaintiff and the Delivery Driver Class similar sub-minimum tipped wages for the time they spent performing non-tipped duties;

d.     Plaintiff and the Delivery Driver Class delivered pizza and food items using automobiles not owned or maintained by Defendant;

e.     Defendant required Plaintiff and the Delivery Driver Class to maintain these automobiles in a safe, legally-operable, and insured condition;

f.     Plaintiff and the Delivery Driver Class incurred costs for automobile expenses while delivering pizzas and other food items for the primary benefit of Defendant;

g.     Plaintiff and the Delivery Driver Class were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

h.     Plaintiff and the Delivery Driver Class were subject to the same pay policies and practices of Defendant;

i.     Plaintiff and the Delivery Driver Class were subject to the same delivery driver reimbursement policy that underestimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

j.     Plaintiff and the Delivery Driver Class were reimbursed similar set amounts of automobile expenses per mile; and

k.     Plaintiff and the Delivery Driver Class were required to purchase their own driving records.

63.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Delivery Driver Class.

64.     Plaintiff is an adequate representative of the Delivery Driver Class because he is a member of the Delivery Driver Class and his interests do not conflict with the interests of the members of the Delivery Driver Class he seeks to represent. The interests of the members of the Delivery Driver Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

65.     Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Delivery Driver Class

14

have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Delivery Driver Class, and there are no material difficulties impairing the management of a class action.

66. It would be impracticable and undesirable for each member of the Delivery Driver Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Delivery Driver Class members.

### *Non-Supervisory Employee Class Allegations*

67.     Plaintiff brings Count V as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and as the Class Representatives of the following persons (the "Non-Supervisory Employee Class"):

> All current and former non-supervisory employees employed by Defendant in the State of Iowa since the date two years preceding the filing of this Complaint.

68.     The state law claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the Non-Supervisory Employee Class.

69.     Plaintiff's state law claim satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

70.     The Non-Supervisory Employee Class satisfies the numerosity standard as it consists of at least hundreds of persons who are geographically dispersed and, therefore, joinder of all members of the Non-Supervisory Employee Class in a single action is impracticable.

71.     Questions of fact and law common to the Non-Supervisory Employee Class predominate over any questions affecting only individual members. The questions of law and fact common to the Non-Supervisory Employee Class arising from Defendant's actions include, without limitation:

a.      Whether Defendant failed to pay wages to members of the Non-Supervisory Employee Class as required by the IWPCL;

b.      Whether Defendant's failure to pay wages was "intentional" within the meaning of the IWPCL;

c.      Whether Defendant required its non-supervisory employees to purchase their own uniform items;

d.      Whether the clothing items at issue constitute a uniform;

e.      Whether purchase of uniform items resulted in sub-minimum wage rates; and

f.      Whether Defendant failed to keep accurate records of deductions from Non—Supervisory Employee Class members' wages in violation of Iowa law.

72.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

73.     Plaintiff's claim is typical of those of the Non-Supervisory Employee Class in that:

a.      Plaintiff and the Non-Supervisory Employee Class have worked as non-supervisory employees for Defendant;

b.      Plaintiff and the Non-Supervisory Employee Class have been required to purchase from Defendant Papa John's distinctive logoed shirts, jackets and hats; and

c.      Plaintiff and the Non-Supervisory Employee Class have received the same or substantially similar wage rates.

74.      A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendant has acted or refused to act on grounds generally applicable to the Non-Supervisory Employee Class.

75.      Plaintiff is an adequate representative of the Non-Supervisory Employee Class because he is a member of the Non-Supervisory Employee Class and his interests do not conflict with the interests of the members of the Non-Supervisory Employee Class he seeks to represent. The interests of the members of the Non-Supervisory Employee Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

76.      Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Non-Supervisory Employee Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Non-Supervisory Employee Class, and there are no material difficulties impairing the management of a class action.

77.      It would be impracticable and undesirable for each member of the Non-Supervisory Employee Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Non-Supervisory Employee Class members.

### Count I: Violation of the Fair Labor Standards Act of 1938 by Paying Sub-Minimum Wages For Time Spent Performing Non-Tipped Duties

78.     Plaintiff reasserts and re-alleges the allegations set forth above.

79.     Defendant is subject to the FLSA's minimum wage requirements because they constitute an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

80.     At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

81.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

82.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

83.     Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009. *Id.*

84.     Employees who spend more than 20% of their work time performing non-tipped duties that are routinely assigned, such as general preparation and maintenance work, cannot be considered "tipped employees" with respect to whom the employer may utilize a tip credit during the time spend performing non-tipped duties. 29 C.F.R. § 531.56(e); DOL Field Operations Handbook § 30d00(e).

85.     Plaintiff and Defendant's other delivery drivers have engaged in non-tipped general preparation and maintenance activities which consumed more than 20% of their work time, such

as answering telephones, preparing orders, preparing ingredients, folding pizza boxes, washing dishes and cleaning.

86.     Defendant has not paid its delivery drivers the full applicable minimum wage for the time they have spent performing these non-tipped general preparation and maintenance tasks; consequently, Plaintiff and the other delivery drivers consistently worked without required pay.

87.     Plaintiff and all similarly situated delivery drivers are entitled to damages equal to the mandated full minimum wage and the tip credit wage provided within the three years preceding the filing of the Complaint, plus period of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for whether its conduct was prohibited by the FLSA.

88.     Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated delivery drivers are entitled to recover an award of liquidated damages in an amount equal the full minimum wage and the tip credit wage for all time spent performing non-tipped duties. Alternatively, should the Court find Defendant acted in good faith or with reasonable grounds in failing to pay the minimum wage, Plaintiff and all similarly situated delivery drivers are entitled to an award of prejudgment interest at the applicable legal rate.

89.     As a result of the aforesaid willful violations of the FLSA's pay provisions, minimum wage compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated delivery drivers. Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count I of this Complaint, Plaintiff and all similarly situated delivery drivers demand judgment against Defendant and pray for: (1) compensatory damages; (2)

liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4)

pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court

deems fair and equitable.

### Count II: Violation of the Fair Labor Standards Act of 1938 by Paying Sub-Minimum Net Wages After Deducting Un-Reimbursed Vehicle Expenses

90.     Plaintiff reasserts and re-alleges the allegations set forth above.

91.     Defendant is subject to the FLSA's minimum wage requirements because they form

an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

92.     At all relevant times herein, Plaintiff and all other similarly situated delivery drivers

have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§

201, *et seq.*

93.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of

employees from federal minimum wage obligations. None of the FLSA exemptions apply to

Plaintiff or other similarly situated delivery drivers.

94.     The FLSA regulates, among other things, the payment of minimum wage by

employers whose employees are engaged in interstate commerce, or engaged in the production of

goods for commerce, or employed in an enterprise engaged in commerce or in the production of

goods for commerce. 29 U.S.C. § 206(a).

95.     Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been

entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

96.     As alleged herein, Defendant has reimbursed delivery drivers less than the

reasonably approximate amount of their automobile expenses to such an extent that it diminishes

these employees' wages beneath the federal minimum wage.

97. Defendant knew or should have known that its pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

98. Defendant, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

99. Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendant's stores.

100. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

101. Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant is not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

102. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees. Accordingly, Defendant is liable under 29 U.S.C.

§ 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count II of this Complaint Plaintiff and all similarly situated delivery drivers demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count III:  Violation of the Fair Labor Standards Act of 1938 Sub-Minimum Net Wages After Deducting Un-Reimbursed Uniform Purchase and Driver Record Costs

103.     Plaintiff reasserts and re-alleges the allegations set forth above.

104.   The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

105.   Defendant is subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

106.   At all relevant times herein, Plaintiff and all other similarly situated non-supervisory employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

107.   Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated non-supervisory employees.

108.   Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

109.   As alleged herein, Defendant has required its non-supervisory employees to purchase uniform items, which diminishes their wages beneath the federal minimum wage.

110.   Defendant knew or should have known that its pay and reimbursement policies, practices and methodology result in failure to compensate non-supervisory employees at the federal minimum wage.

111.   Defendant, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

112.   Plaintiff and all similarly situated non-supervisory employees are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Defendant's stores.

113.   Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated uniform items and driver record costs within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

114.   Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should

the Court find Defendant is not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

115.    As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendant from Plaintiff and all similarly situated employees. Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count III of this Complaint, Plaintiff and all similarly situated non-supervisory employees demand judgment against Defendant and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## Count IV: Violation of the Iowa Wage Payment Collection Law on Behalf of the Delivery Driver Class

116.    Plaintiff reasserts and re-alleges the allegations set forth above.

117.    At all relevant times herein, Plaintiff and the Delivery Driver Class have been entitled to the rights, protections, and benefits provided under the IWPCL, Iowa Code § 91.A.1 *et seq.*

118.    The IWPCL requires "employers" to pay all wages owed to their "employees" less lawful deductions.  Iowa Code §§ 91.A.3 & 91.A.2(3), (4) & (7).

119.    During all times relevant to this action, Defendant was the "employer" of Plaintiff and the Delivery Driver Class within the meaning of the IWPCL.  Iowa Code § 91.A.1(4).

120.    During all times relevant to this action, Plaintiff and the Delivery Driver Class were Defendant's "employees" within the meaning of the IWPCL.  Iowa Code § 91.A.1(3).

121.    Defendant has violated the IWPCL by failing to pay Plaintiff and the Delivery Driver Class (a) the full minimum wage for time spent performing non-tipped duties and (b) the full minimum wage for all time worked after deducting unreimbursed vehicle and driving record costs.  Iowa Code § 91.A.3.

122.    Defendant has intentionally refused to pay all wages due as set forth above to Plaintiff the Delivery Driver Class in violation of the IWPCL.  *Id.*

123.    Defendant is not permitted by federal or state law to withhold or divert any portion of the wages of Plaintiff and the Delivery Driver Class that are at issue in this suit.

124.    Defendant does not have written authorization from Plaintiff or the Delivery Driver Class to withhold, divert or deduct any portion of the wages of Plaintiff and the Delivery Driver Class that are at issue in this suit.

125.    Plaintiff and the Delivery Driver Class are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the IWPCL, has been applied, and continues to be applied, to all Delivery Driver Class members.

126.    Plaintiff and the Delivery Driver Class are entitled to damages equal to the full minimum wage due within two years preceding the filing of this Complaint plus periods of equitable tolling. Iowa Code § 91.A.8.

127.    Defendant's conduct has been intentional, and therefore Plaintiff and the Delivery Driver Class are entitled to recover an additional equal amount as liquidated damages.  *Id.*

128.    Plaintiff and the Delivery Driver Class are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

129.    Defendant is liable for Plaintiff's usual and necessary costs and attorneys' fees incurred in this action.  *Id.*

WHEREFORE on Count IV of this Complaint, Plaintiff and the Delivery Driver Class demand judgment against Defendant and pray for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Iowa Code § 91.A.8; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## Count V: Violation of the Iowa Wage Payment Collection Law on Behalf of the Delivery Driver Class

130.    Plaintiff reasserts and re-alleges the allegations set forth above.

131.    At all relevant times herein, Plaintiff and the Non-Supervisory Employee Class have been entitled to the rights, protections, and benefits provided under the IWPCL, Iowa Code § 91.A.1 *et seq.*

132.    The IWPCL requires "employers" to pay all wages owed to their "employees" less lawful deductions.  Iowa Code §§ 91.A.3 & 91.A.2(3), (4) & (7).

133.    During all times relevant to this action, Defendant was the "employer" of Plaintiff and the Non-Supervisory Employee Class within the meaning of the IWPCL.  Iowa Code § 91.A.1(4).

134.    During all times relevant to this action, Plaintiff and the Non-Supervisory Employee Class were Defendant's "employees" within the meaning of the IWPCL.  Iowa Code § 91.A.1(3).

135.    Defendant has violated the IWPCL by failing to pay Plaintiff and the Non-Supervisory Employee Class the full minimum wage for all time worked after deducting unreimbursed uniform purchase expenses.  Iowa Code § 91.A.3.

136.    Defendant has intentionally refused to pay all wages due as set forth above to Plaintiff the Non-Supervisory Employee Class in violation of the IWPCL.  *Id.*

137.     Defendant is not permitted by federal or state law to withhold or divert any portion of the wages of Plaintiff and the Non-Supervisory Employee Class that are at issue in this suit.

138.     Defendant does not have written authorization from Plaintiff or the Non-Supervisory Employee Class to withhold, divert or deduct any portion of the wages of Plaintiff and the Non-Supervisory Employee Class that are at issue in this suit.

139.     Plaintiff and the Non-Supervisory Employee Class are victims of a uniform and employer-based compensation policy. This uniform policy, in violation of the IWPCL, has been applied, and continues to be applied, to all Non-Supervisory Employee Class members.

140.     Plaintiff and the Non-Supervisory Employee Class entitled to damages equal to the full minimum wage due within two years preceding the filing of this Complaint plus periods of equitable tolling. Iowa Code § 91.A.8.

141.     Defendant's conduct has been intentional, and therefore Plaintiff and the Non-Supervisory Employee Class are entitled to recover an additional equal amount as liquidated damages. *Id.*

142.     Plaintiff and the Non-Supervisory Employee Class are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

143.     Defendant is liable for Plaintiff's usual and necessary costs and attorneys' fees incurred in this action. *Id.*

WHEREFORE, on Count V of this Complaint, Plaintiff and the Non-Supervisory Employee Class demand judgment against Defendant and pray for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Iowa Code § 91.A.8; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

## **Demand for Jury Trial**

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Respectfully submitted,

By _____/s/ Bruce H. Stoltze_____
Bruce H. Stoltze AT 0007521
STOLTZE & UPDEGRAFF, P.L.C.
300 Walnut Street, Suite 260
Des Moines, Iowa  50309
Telephone:     515-244-1473
Fax:             515-244-3930
Email:  bruce.stoltze@stoltzelaw.com

By: _____/s/ Mark Potashnick_____
Mark A. Potashnick (*pro hac vice forthcoming*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:  (314) 997-9150
Facsimile:  (314) 997-9170
Email:  markp@wpattorneys.com

By: _____/s/ Eli Karsh_____
Eli Karsh (*pro hac vice forthcoming*)
LIBERMAN, GOLDSTEIN & KARSH
230 South Bemiston Ave., Suite 1200
Clayton, Missouri  63105
Telephone: (314) 862-3333 Ext 13
Facsimile:  (314) 862-0605
Email:  elikarsh@aol.com

Attorneys for Plaintiffs

**ORIGINAL FILED.**