IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| BRANDON TEGTMEIER, on behalf of himself and others similarly situated,<br><br>      Plaintiffs,<br><br>vs.<br><br>PJ Iowa, L.C.<br><br>      Defendant. | **No. 3:15-cv-00110 - JEG**<br><br><br>**ORDER** |

This matter is before the Court on a Second Motion to Dismiss for Failure to State a Claim (Motion to Dismiss) pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 22, and a Motion for Order Allowing Defendant to Deposit Settlement Funds With Court (Rule 67 Motion) pursuant to Federal Rule of Civil Procedure 67, ECF No. 32, brought by Defendant PJ Iowa, L.C. (PJ Iowa).  Plaintiff Brandon Tegtmeier (Tegtmeier), on behalf of himself, two putative collective actions pursuant to 29 U.S.C. § 216(b), and two putative class actions pursuant to Federal Rule of Civil Procedure 23, resists.  Neither party requested a hearing on the Motions, and the Court finds a hearing is unnecessary.  The matter is fully submitted and ready for disposition.

## I.    BACKGROUND

PJ Iowa operates twenty-six Papa John's franchise stores in Iowa, Illinois, and South Dakota.  From January to October 2014, Tegtmeier was employed by PJ Iowa as a delivery driver in Davenport, Iowa.  During Tegtmeier's period of employment, PJ Iowa paid Tegtmeier a cash wage of $5.50 per hour and applied a tip credit for all of Tegtmeier's work time.  On October 15, 2015, Tegtmeier filed a five-count Complaint against PJ Iowa for violation of the federal Fair

Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* and the Iowa Wage Payment Collection Law (IWPCL), Iowa Code § 91A.  Tegtmeier filed a seven-count First Amended Complaint on December 3, 2015, adding two counts alleging violations of the Iowa Minimum Wage Law (IMWL), Iowa Code § 91D.[1]

Tegtmeier alleges that certain practices of PJ Iowa caused his net wages to fall below the minimum wage set by federal and Iowa law.  In particular, Tegtmeier alleges that PJ Iowa requires delivery drivers, who are paid as tipped employees, to spend over 20% of their work time performing non-tipped work such as answering telephones, preparing food orders, washing dishes, and cleaning.  Tegtmeier argues that PJ Iowa's tip credit was improperly applied to time spent performing non-tipped work and that he and other delivery drivers are entitled to the full minimum wage for that time.  Tegtmeier also alleges that delivery drivers, who operate their own vehicles on the job and who are responsible for out-of-pocket expenses for maintenance and upkeep of those vehicles, are not reimbursed at a rate that reasonably approximates the delivery drivers' costs of owning and operating their vehicles for PJ Iowa's benefit.  This failure to adequately reimburse, Tegtmeier argues, constitutes a "kickback" to PJ Iowa and as a result, reduces his and other delivery drivers' net wages below the minimum wage.  Tegtmeier also alleges that delivery drivers must at their own expense procure their driving records for PJ Iowa, which also reduces their net wages below the minimum wage.  Finally, Tegtmeier alleges that PJ

---

[1] On November 16, 2015, PJ Iowa filed a Motion to Dismiss Tegtmeier's original complaint.  ECF No. 11.  Tegtmeier then filed its First Amended Complaint on December 3, 2015.  ECF No. 18.  On December 17, 2015, PJ Iowa filed its Second Motion to Dismiss and advised the Court the motion was in substitution of its previously filed motion.  ECF No. 22. Accordingly, by Order of December 28, 2015, the Court termed PJ Iowa's first Motion to Dismiss, deeming it moot.  ECF No. 25.

Iowa requires delivery drivers and other non-supervisory employees to purchase uniform items, which similarly results in PJ Iowa's non-supervisory employees receiving sub-minimum net wages.

Tegtmeier also alleges that his uniform purchases and those of other employees, made through payroll deductions, were made without proper written authorization as required under Iowa law.  PJ Iowa counters this allegation by attaching to its Motion to Dismiss a document purporting to show Tegtmeier's authorization to deduct the costs of one shirt from his paycheck. PJ Iowa also asserts in its Reply Brief supporting its Motion to Dismiss that it provides employees with one shirt and hat at no cost and argues that any additional uniform purchases are made by the employee for his or her convenience.

Tegtmeier alleges that he is entitled to relief as part of four related but distinct groups. Tegtmeier asserts claims under the FLSA on behalf of two "opt-in" collective actions under 29 U.S.C. § 216(b): one collective action made up of all similarly situated delivery drivers and another made up of all similarly situated non-supervisory employees.  On behalf of all similarly situated delivery drivers, Tegtmeier claims that PJ Iowa violated the FLSA by (1) paying delivery drivers as tipped employees but requiring them to spend 20% or more of their time on non-tipped work (Count I); and (2) failing to appropriately reimburse delivery drivers for vehicle expenses, including driving record costs (Count II).  On behalf of all similarly situated non-supervisory employees, Tegtmeier claims that PJ violated the FLSA by not reimbursing employees for uniform and driving record expenses (Count III).

Tegtmeier also asserts claims under Iowa law for an "opt-in" class action pursuant to Rule 23 of the Federal Rules of Civil Procedure made up of delivery drivers who were employed by PJ

Iowa in Iowa (the Iowa Delivery Driver Class).  On behalf of the Iowa Delivery Driver Class, Tegtmeier claims that PJ Iowa violated the IMWL by failing to appropriately reimburse delivery drivers for vehicle expenses and driving record expenses, which resulted in net wages for delivery drivers that fell below the Iowa minimum wage (Count IV).  Also on behalf of the Iowa Delivery Driver Class, Tegtmeier claims that PJ Iowa illegally withheld or diverted portions of delivery drivers' wages under the IWPCL by inadequately reimbursing delivery drivers for their vehicle expenses and driving record expenses (Count VI).

Finally, Tegtmeier asserts claims under Iowa law for an "opt-in" Rule 23 class action made up of non-supervisory employees who were employed by PJ Iowa in Iowa (the Iowa Non-Supervisory Employee Class).  On behalf of the Iowa Non-Supervisory Employee Class, Tegtmeier claims that PJ Iowa violated the IMWL by failing to appropriately reimburse employees for uniform expenses, which resulted in net wages for non-supervisory employees that fell below the Iowa minimum wage (Count V).  Also on behalf of the Iowa Non-Supervisory Employee Class, Tegtmeier claims that PJ Iowa illegally withheld or diverted portions of employees' wages under the IWPCL by deducting uniform expenses without permission (Count VII).

In its Motion to Dismiss, PJ Iowa argues that Tegtmeier's IMWL claims (Counts IV-V) are preempted by the FLSA.  PJ Iowa argues that Tegtmeier's FLSA and IMWL claims arise from the same facts and allege that the same entitlement provided by federal and state law, yet would require the Court to supervise simultaneous collective action and class action procedures, involving different (but overlapping) sets of plaintiffs pursuing essentially the same claims.  This, in PJ Iowa's view, causes a conflict between the federal and state minimum-wage claims that

compels dismissal of the state claims.  PJ Iowa also argues that Tegtmeier's claim for violation

of the IWPCL from vehicle expenses and driving record expenses (Count VI) fails because the

unreimbursed business expenses alleged are not "deductions" under the IWPCL.  Finally, PJ

Iowa argues that Tegtmeier's claim for violation of the IWPCL from uniform deductions (Count

VII) fails because Tegtmeier in fact signed a written authorization allowing uniform deductions.

PJ Iowa also filed a motion on March 7, 2016, requesting to deposit funds with the Court

pursuant to Federal Rule of Civil Procedure 67(a).  Specifically, PJ Iowa asks for permission to

deposit $6000 with the Court, which it argues constitutes the full amount of damages that

Tegtmeier claims individually.[2]  PJ Iowa also represents that it will deposit with the Court or

transfer to Tegtmeier an amount equal to his fees, costs, and interest provided by statute after

Tegtmeier moves for such relief and the matter is briefed and argued.  PJ Iowa contends that if it

is allowed to deposit such funds with the Court and pledges to pay Tegtmeier an amount of costs,

fees, and interest to be determined later by the Court, then Tegtmeier's claims will be moot in

accordance with Campbell-Ewald v. Gomez, 136 S. Ct. 663 (2016).  However, PJ Iowa states in

its Reply Brief that it is not moving to dismiss Tegtmeier's claims for mootness at this time.

## II.   DISCUSSION

### A.   Jurisdiction

---

[2]  In its Reply Brief in support of its Rule 67 Motion, PJ Iowa requests to deposit $6500, a figure representing an updated settlement offer based on damages estimates that Tegtmeier offered in his Brief in Opposition to PJ Iowa's Rule 67 Motion.  This District's Local Rules require a party moving under Federal Rule of Civil Procedure 67(a) to "electronically attach to the motion, under the same docket entry as the motion, a proposed order granting the motion." S.D. Iowa L.R. 67(a).  PJ Iowa did not file a proposed order bearing its new $6500 figure, so the Court will address PJ Iowa's Rule 67 Motion with respect to its original $6000 request.

Tegtmeier filed this action pursuant to 29 U.S.C. § 216(b), which offers a private right of action for FLSA violations.  This Court has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1331.  Tegtmeier's Iowa law claims arise out of the same conduct as the federal claims, and this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

### B.    PJ Iowa's Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Benton v. Merrill Lynch & Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008) (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  United States ex rel. Raynor v. Nat'l Rural Utils. Co-op. Fin., Corp., 690 F.3d 951, 955 (8th Cir. 2012) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### 1.    FLSA Preemption of IMWL Claims

PJ Iowa argues that the FLSA preempts Tegtmeier's IMWL claims pled as Counts IV-V. PJ Iowa notes that Tegtmeier's FLSA claims and IMWL claims are based on the same alleged

conduct and request the same relief.  The FLSA and IMWL independently establish mandatory federal and state minimum wages, though the minimum wage fixed by both statutes is currently the same.  Compare 29 U.S.C. § 206(a)(1), with Iowa Code § 91D.1(1)(a).  For that reason, the practical difference between the claims is procedural: the FLSA claims are made on behalf of opt-in collective actions, while the IMWL claims are made on behalf of two putative Rule 23 opt-out class actions.  PJ Iowa argues that Tegtmeier's IMWL claims are simply an attempt to circumvent the FLSA's collective action procedures, and the presence of simultaneous collective action and class action claims creates a conflict that compels dismissal of the IMWL claims.

The Supremacy Clause gives Congress the power to preempt state law.  Arizona v. U.S., 132 S. Ct. 2492, 2500 (2012).  "'[S]tate laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid,' or preempted."  Wuebker v. Wilbur Ellis Co., 418 F.3d 883, 886 (8th Cir. 2005) (quoting Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991)).  There are three ways in which Congress may preempt a state law: "when Congress expressly forbids state regulation (express preemption), when it creates a scheme of federal regulation so pervasive that the only reasonable inference is that it meant to displace the states (field preemption), and when a law enacted by it directly conflicts with state law (conflict preemption)."  Id.  Courts, however, "should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'"  Arizona, 132 S. Ct. at 2501 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).  Preemption is generally an affirmative defense.  Wuebker, 418 F.3d at 886.

The FLSA has a "savings clause" that expressly preserves state and municipal authority to regulate wages, and therefore express and field preemption do not apply here.  29 U.S.C. §

218(a); see also Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 884 (N.D. Iowa 2008)

("T]he [FLSA] savings clause indicates that Congress did not foreclose states from providing

alternative remedies."). The Court must therefore determine whether conflict preemption

applies. Federal law conflicts with state law where compliance with both federal and state law is

impossible or "where the challenged state law 'stands as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress.'" Arizona, 132 S. Ct. at 2501

(quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)); see also Wuebker, 418 F.3d at 887

(noting that conflict preemption "is a kind of implied preemption").

Compliance with the substantive demands of both the FLSA and the IMWL is clearly *not*

impossible. As PJ Iowa notes, Tegtmeier's FLSA and IMWL claims are based on nearly

identical legal provisions. But the question remains whether allowing the IMWL claims to

proceed in this case frustrates the objectives of the FLSA. Answering this question requires the

Court to distinguish between two ways in which state law wage claims can interact with the

FLSA. Citing this Court's decision in Zanders v. Wells Fargo Bank N.A., 55 F. Supp. 3d 1163

(S.D. Iowa 2014), PJ Iowa argues that allowing a Rule 23 class action for a state law claim that is

"duplicative" of a FLSA claim would undermine the intent of Congress to limit FLSA recovery

to opt-in collective actions. The claims in this case, however, differ from those in Zanders.

Here, Tegtmeier brings "parallel claims," meaning that Iowa law offers a legal right and cause of

action independent from the FLSA, though nevertheless applying standards identical to the FLSA

and offering the same remedies. Conversely,"duplicative claims," as discussed in Zanders, occur

where state law offers a cause of action that allows a plaintiff to vindicate substantive rights

conferred by federal law.

In <u>Zanders</u>, the plaintiffs brought claims under federal law and Iowa law arising from the same conduct. <u>Zanders</u>, 55 F. Supp. 3d at 1166. The plaintiffs alleged that the defendants required employees to assume workloads that could not be completed in 40-hour workweeks, that the plaintiffs actually worked more than 40 hours per week, and that the defendants did not pay the plaintiffs proper overtime wages. <u>Id.</u> The plaintiffs attempted to maintain FLSA claims governed by the FLSA's collective action procedures and claims for violations of the IWPCL governed by Rule 23's class action procedures. <u>Id.</u> at 1166, 1170.

Unlike the present case, the <u>Zanders</u> plaintiffs did not make IMWL claims   their state law claims only pursued violations of the IWPCL. <u>See id.</u> at 1166. The IWPCL is a remedial statute that requires employers to pay wages owed to their employees   it "does not independently establish the amount of wages that an employer must pay its employees." <u>Id.</u> at 1175 (citing Iowa Code § 91A.3). As this Court noted, "[a] violation of the IWPCL . . . is not always dependent upon establishing a violation of the FLSA. . . . The wages due under the IWPCL could be based on any number of legal bases, such as an employment agreement *or Iowa's minimum wage law*." <u>Id.</u> (first and third alterations in original) (emphasis added) (quoting <u>Bouaphakeo</u>, 564 F. Supp. 2d at 884 n.9). But the <u>Zanders</u> plaintiffs' IWPCL claim did not "state any legal theory entitling them to wages collectible under the IWPCL other than a violation of the FLSA." <u>Id.</u> Thus, the IWPCL claim was "dependant on, and duplicative of, the[] FLSA claim." <u>Id.</u> at 1176.

This Court acknowledged in <u>Zanders</u> that it is technically possible to simultaneously maintain collective action litigation and class action litigation for wage claims covering the same conduct and that other courts in this Circuit have done so. <u>Id.</u> at 1175. Nevertheless, this Court

held that "the conflict between § 216(b) [the FLSA's collective action provision] and Rule 23 requires the Court to hold that the FLSA does preempt duplicative state law claims on behalf of similarly situated employees." Id. at 1175.  This Court reasoned that "the most significant conflict" between the duplicative FLSA and IWPCL claims was "the difference between § 216(b) and Rule 23's opt-out procedure." Id. at 1173.  Section 216(b) was added to the FLSA as an amendment as part of the Portal-to-Portal Act of 1947. Id. at 1174 (citing Portal-to-Portal Act of 1947, 61 Stat. 87).  These amendments to the FLSA were meant to limit employer liability, fine-tuning the balance struck by the FLSA "between protecting employees and shielding employees from excessive liability." Id.  This Court thus found that allowing the duplicative state law claims to proceed would disrupt this balance.

In doing so, this Court in Zanders was responding to the district court's contrary conclusion in Bouaphakeo, which also addressed whether the FLSA preempts duplicative state law wage claims.  The Bouaphakeo court acknowledged the procedural conflict between collective actions and class actions in a case, like Zanders, involving FLSA wage claims and IWPCL claims based only on failure to pay wages guaranteed by the FLSA.  Bouaphakeo, 564 F. Supp. 2d at 883.  The Bouaphakeo court's preemption analysis attributed great significance to the FLSA's savings clause, reasoning that "because the FLSA does not provide the exclusive remedy for its violations, the court does not believe Plaintiffs' duplicative IWPCL claim 'interferes,' 'frustrates,' 'conflicts,' or 'stands as an obstacle' to the goals of the FLSA." Id. at 885 (quoting Forest Park II v. Hadley, 336 F.3d 724, 733 (8th Cir. 2003)).  In reading this conclusion, the Bouaphakeo court found that the "goal" of the FLSA was "to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health,

efficiency, and general well-being of workers.'" Id. (quoting Anderson v. Sara Lee Corp., 508 F.3d 181, 192 (4th Cir. 2007)). This overarching goal of the FLSA accords with the IWPCL's goal of "facilitat[ing] the public policy of allowing employees to collect wages owed to them by their employers." Id. at 883 (quoting Hornby v. State, 559 N.W.2d 23, 26 (Iowa 1997)). Thus, the Bouaphakeo court held that even duplicative state law claims were not preempted by the FLSA. Id. at 885.

   This Court in Zanders, finding that the FLSA does preempt duplicative state law claims, disagreed with Bouaphakeo for two reasons. First, while the Bouaphakeo court emphasized the overall purpose of the FLSA, this Court found more relevant Congress's intent to limit FLSA liability when it amended the FLSA to provide for opt-in collective actions via the Portal-to-Portal Act. Zanders, 55 F. Supp. 3d at 1173-74. Second, while the FLSA's savings clause clearly reserves for states significant independent regulatory authority, this Court concluded that the savings clause primarily speaks to state substantive regulations of wages and hours   it was not meant to provide states a vehicle for redressing violations of the FLSA. See id. at 1173 ("Bouaphakeo placed its reliance on the savings clause in § 218(a), which the court recognized did not address remedies . . . .This Court is not similarly persuaded the savings clause does so much and is rather persuaded the procedural conflict is central to the analysis." (internal citations omitted)). Instead, this Court looked to opinions from the Fourth and Ninth Circuits. In Anderson v. Sara Lee Corp., the Fourth Circuit held that the FLSA preempted the "depend on establishing that [the defendant] violated the FLSA." Anderson, 508 F.3d at 193. Meanwhile, in Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1154 (9th Cir. 2000), the Ninth Circuit

noted in dicta that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA."

But this Court's finding in <u>Zanders</u> that the FLSA preempts duplicative state law claims does not suffice to resolve PJ Iowa's Motion, because Tegtmeier's IMWL claims are different from the duplicative claims at issue in <u>Zanders</u> and <u>Anderson</u>.  Here, Tegtmeier presents parallel claims under the IMWL and the FLSA.  The IMWL provides an independent legal basis for establishing the amount of wages an employer must pay its employees.  Iowa Code § 91D.1; <u>see also</u> <u>Zanders</u>, 55 F. Supp. 3d at 1175 (contrasting the IWPCL and IMWL in this respect).

Other courts have made this distinction between duplicative state law wage claims, which are preempted by the FLSA, and parallel claims, which are not.  The Third Circuit, for example, has rejected arguments that "state enforcement of standards that are identical with those established in the FLSA would somehow conflict with congressional purpose."  <u>Knepper v. Rite Aid Corp.</u>, 675 F.3d 249, 262 (3d Cir. 2012).  In <u>Knepper</u>, the Third Circuit refused to "bar enforcement of all state wage and hour laws that did not exceed the standards of the FLSA."  <u>Id.</u> To do so would be "a significant intrusion on state authority and a reversal of the traditional presumption against preemption, which is particularly strong given states' lengthy history of regulating employees' wages and hours."  <u>Id.</u>[3]  The Third Circuit found the Fourth Circuit's

---

[3] The Third Circuit also found that the legislative history of the FLSA did not show antipathy on the part of Congress toward opt-out class actions recovering for violations of state wage and hour laws.  The court of appeals found that "[t]he historical evidence establishes that Congress created the opt-in scheme primarily as a check against the power of unions, whose representatives had allegedly manufactured litigation in which they had no personal stake, and as a bar against one-way intervention by plaintiffs who would not be bound by an adverse judgment."  Knepper, 675 F.3d at 260; see also Ervin v. OS Rest. Servs., Inc., 632 F.3d 971, 978 (7th Cir. 2011) ("[Section 216(b)] was designed to eliminate lawsuits by third parties (typically union leaders) on behalf of a disinterested employee . . . .").  The Knepper court further

decision in Anderson "readily distinguishable because none of the state laws at issue [in

Anderson] created the substantive rights that had been allegedly violated." Id. at 263.  In

Anderson, said the Third Circuit, "[t]he court sensibly declined to allow the plaintiffs to use state

non-labor laws to enforce the substantive provisions of the FLSA," which is not the same as

seeking "to enforce rights granted by independent state employment laws through a federal

remedy." Id.; see also Anderson, 505 F.3d at 193 ("[Plaintiffs] rely on the FLSA for their rights,

and they invoke state law only as the source of remedies for the alleged FLSA violations.");

Zanders, 55 F. Supp. 3d 1176 ("Plaintiffs' Petitions do not state any legal theory entitling them to

wages collectible under the IWPCL other than a violation of the FLSA.").  Thus, the Third

Circuit held that parallel class actions seeking recovery under Ohio and Maryland law could

proceed alongside the FLSA collective action in that case.  Knepper, 675 F.3d at 264.[4]

---

explained:

> Absent from the debates [over the Portal-to-Portal Act of 1947] was any mention of
> opt-out class actions    an unsurprising fact, since the FLSA had not been interpreted
> to permit such suits.  The FLSA did not become relevant to opt-out class actions until
> after the revision of Rule 23 and the creation of modern Rule 23(b)(3) in 1966 . . . .
> The effect of [the 1966 creation of modern Rule 23(b)(3)] was to convert what had
> been an affirmative grant beyond the limited provisions of pre-revision Rule 23 into
> "a limitation upon the affirmative permission for representative actions that already
> exists in Rule 23 . . . ."

Id. at 257 (quoting Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 176 (1989) (Scalia, J.,
dissenting)).  The Third Circuit thus concluded that "the full legislative record casts doubt on the
contention that § 216(b) was intended to eliminat[e] representative (i.e., opt-out) actions. . . .
especially since *modern Rule 23 opt-out actions did not exist at the time* and had not occurred
under the earlier FLSA enforcement scheme."  Id. at 260 (first alteration in original) (emphasis
added) (internal citation and quotation marks omitted).

[4]  PJ Iowa cites Otto v. Pocono Health Sys., 457 F. Supp. 2d 522, 523-24 (M.D. Pa. 2006),
in which the district court found that parallel claims made under the Pennsylvania Minimum
Wage Act (PMWA) were preempted by the FLSA, and Ramsey v. Ryan Beck & Co., Inc., Civil
Action No. 07-635, 2007 WL 2234567, at *2 (E.D. Pa. Aug. 1, 2007), in which the district court

District courts within the Fourth Circuit have also distinguished Anderson on similar grounds.  See, e.g., Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662, 671 (D. Md. 2011) ("Where a state statutory regime creates both a right and mechanism for enforcement, however, even if parallel to the rights and remedies established in FLSA, state law claims are not preempted."); see also Chavez v. Besie's Corp, No. GJH-14-1338, 2014 WL 5298032, at *4 (D. Md. Oct. 10, 2014) ("[I]f a MWPCL violation is based on the wage rate set forth in the MWHL, the MWPCL claims are based on a Maryland law and therefore not preempted by the federal FLSA."); Mould v. NJG Food Serv. Inc., Civil No. JKB-13-1305, 2014 WL 1430696, at *1, *3 (D. Md. Apr. 11, 2014) (same).  At least one district court within the Eighth Circuit has also distinguished Anderson on this basis.  See Cortez v. Nebraska Beef, Inc., 266 F.R.D. 275, 284 (D. Neb. 2010) ("[T]he case at bar is nearly factually identical to the DeKeyser [v. Thyssenkrupp Waupaca, Inc., 589 F. Supp. 2d 1026 (E.D. Wis. 2008)] case, where the plaintiffs alleged the defendants actions violate both state and federal laws.  These cases are distinguishable from Anderson, where no state law wage violations were alleged.  Rather, the plaintiffs in Anderson asserted state claims . . . as sources of remedies for alleged FLSA violations.").

Convinced by Judge Scirica's analysis in Knepper, this Court concludes that the FLSA does not preempt parallel state law wage claims, even when those claims implicate class-action procedures that conflict with the FLSA's collective-action procedures.  The significance of the savings clause should be greater, and the significance of the Portal-to-Portal Act amendments should be lesser, when the substantive wage entitlements claimed arise from state law, rather

---

found that PMWA class-action claims were incompatible with FLSA collective actions.  Id. at *2.  The Third Circuit's holding in Knepper that the FLSA does not preempt parallel state law claims post-dates these district court decisions, critically undermining their persuasive authority.

than federal law.  This Court previously concluded that "the procedural conflict is central to the analysis" where plaintiffs attempted to vindicate federal rights through state law. Zanders, 55 F.Supp.3d at 1173.  But Congress's explicit preservation of state regulatory authority regarding wages and hours is more salient when plaintiffs pursue rights conferred under state law.  See Knepper, 675 F.3d at 262 ("[Defendant] suggests that state enforcement of standards that are identical with those established in the FLSA would somehow conflict with congressional purpose. This would be especially odd where Congress explicitly contemplated dual enforcement of the FLSA.").

The procedural conflict might compel a different conclusion if it were impossible to maintain collective action and class action claims together, but that is not the case.  See Zanders, 55 F.Supp.3d at 1174-75 ("[A]lthough complicated, it is possible to try FLSA and IWPCL claims simultaneously.").  That the Eighth Circuit declined to address the procedural conflict in Bouaphakeo v. Tyson Foods, Inc., 765 F.3d 791 (8th Cir. 2014), aff'd on other grounds, Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036 (2016)   despite a dissent on this point demonstrates that the procedural conflict alone is not automatically fatal to state law claims.  Cf. Bouaphakeo, 765 F.3d at 796 n.4.  Other courts have said that processing state and federal claims in one federal court action is the *more* efficient option.  See Ervin v. OS Rest. Servs., Inc., 632 F.3d 971, 978 (7th Cir. 2011) ("If these actions were to proceed separately   the FLSA in federal court and the state-law class action in state court   an entirely different and potentially worse problem of confusion would arise, with uncoordinated notices from separate courts peppering the employees."); Fry v. Accent Mktg. Servs., L.L.C., No. 4:13CV59 CDP, 2013 WL 2403669, at *3 (E.D. Mo. May 31, 2013) ("Here, because 'the factual overlap between the FLSA claims and the

state wage and hours law claims is virtually total, [i]t would illserve the interests of convenience or judicial economy to re-litigate in state court the defendants' pay practices.'") (quoting Arnold v. DirecTV, Inc., No. 4:10CV00352 AGF, 2011 WL 839636, at *8 (E.D. Mo. Mar. 7, 2011)); Cortez, 266 F.R.D. at 287 (same).

Based on the foregoing. the procedural conflict implicated by parallel IMWL and FLSA claims does not outweigh the following countervailing considerations:  First, Congress clearly did not intend to displace substantive state wage and hour regulations with the FLSA, nor to prevent recovery for violation of such state law in federal court.  Knepper, 675 F.3d at 262. Second, the minimum wage provisions of the FLSA and IMWL have the same legislative goal: to "establish the amount of wages an employer must pay its employees." See Zanders, 55 F. Supp. 3d at 1169.  Finally, "courts should assume that 'the historic police powers of the States' are not superseded 'unless that was the clear and manifest purpose of Congress.'" Id. (quoting Arizona, 132 S. Ct. at 2501); see also Knepper, 675 F.3d at 262 (finding the "traditional presumption against preemption" to be "particularly strong given states' lengthy history of regulating employees' wages and hours").  Thus, Tegtmeier's claims pursuing relief for violations of the IMWL (Counts IV-V) are not preempted by federal law.

## 2.    IWPCL Claim For Unreimbursed Business Expenses

Count VI of the FAC alleges, on behalf of the Iowa Delivery Driver Class, that PJ Iowa violated the IWPCL by failing to fully reimburse delivery drivers' vehicle costs and driving record costs.  PJ Iowa argues that Tegtmeier fails to state a claim because the claim concerns unreimbursed business expenses, and the relevant provision of the IWPCL only pertains to improper deductions from employees' paychecks.  In response, Tegtmeier argues that

unreimbursed expenses made by employees for the employer's benefit constitute an indirect "kickback" of the employees' own wages under Iowa Admin. Code r. 875-217.35(91.D), such that wages in the amount of the "kickbacks" remain due to employees under the IWPCL. Tegtmeier also argues that there is no meaningful distinction between deductions and unreimbursed business expenses when determining whether an employer has failed to pay wages due to its employees.

It is helpful to examine Tegtmeier's Count VI in relation to Count IV.  Counts IV and VI are pled on behalf of the same Iowa Delivery Driver Class and are based on the same conduct unreimbursed vehicle costs and driving record costs but Count IV alleges a violation of the IMWL, while Count VI alleges a violation of the IWPCL.  In Count IV, Tegtmeier alleges that PJ Iowa's expense reimbursement policies caused the net wages of the Iowa Delivery Driver Class to be less than the minimum wage specified in the IMWL.  To support his argument that certain unreimbursed business expenses can cause a minimum wage violation, Tegtmeier cites provisions of the Iowa Administrative Code that interpret the IMWL.[5]  However, the wage-setting provision of the IMWL under which Tegtmeier seeks relief in Count IV does not itself provide a cause of action.  See Iowa Code § 91D.1.  For that, Tegtmeier must avail himself of the IWPCL, which requires that an employer pay "all wages due its employees," Iowa Code § 91A.3, and makes employers liable for any wages owed that are intentionally unpaid, Iowa Code § 91A.8.

---

[5] The cited Iowa Administrative Code provisions implement Iowa Code chapter 91D.  Iowa Admin. Code rr. 875-217.35(91D), 875-217.36(91D).  Iowa Code § 91D contains the IMWL, and Iowa Code § 91A contains the IWPCL

In Count VI, Tegtmeier alleges that PJ Iowa has failed to pay "all wages due" to the Iowa Delivery Driver Class in a different way.  Tegtmeier alleges that PJ Iowa's vehicle and driving record reimbursement policies constitute an unauthorized "deduction," as defined in Iowa Code § 91A.5, from the wages of the Iowa Delivery Driver Class.  In contrast to Count IV, Tegtmeier does not ground Count VI in any wage entitlements provided by the IMWL.  Instead, Tegtmeier claims a separate right that exists under Section 91A.5 of the IWPCL to prevent certain unauthorized wage deductions.  Cf. Ferezy v. Wells Fargo Bank, N.A., 755 F. Supp. 2d 1010, 1017 (S.D. Iowa 2010) ("When reading § 91A.5 as a whole, it is apparent that the statute was aimed at prohibiting employers from deducting wages for purposes that benefit the employer or are otherwise illegal under federal or state law.").

But the statutory right of an employee to prevent unauthorized wage deductions requires a deduction to have been made.  See Morris v. Conagra Foods, Inc., 435 F. Supp. 2d 887, 911 (N.D. Iowa 2005) (finding that plaintiff failed to state a claim for violation of Iowa Code § 91A.5 because the complaint "glosses over the fact that wages were never actually withheld from [the plaintiff's] paycheck").  Tegtmeier provides no authority to the contrary.  Instead, Tegtmeier argues that there is no legal difference between an unpaid expense reimbursement and a deduction, only citing cases addressing the salience of unpaid expense reimbursements in the context of *minimum wage violation* claims.[6]  But Count VI is not a minimum wage claim; it is a

---

[6]  With respect to Tegtmeier's minimum wage claims under the FLSA and the IMWL, PJ Iowa does not appear to dispute the general principle that improperly reimbursed business expenses may, under certain circumstances, result in a violation of minimum wage laws.  See Def.'s MTD Br. 7, ECF No. 22-1 (acknowledging that Iowa's anti-kickback regulation, which clarifies that indirect kickbacks by the employee may factor into the minimum wage analysis, see Iowa Admin. Code r. 875-217.35(91D), could apply to minimum wage claims based on improper reimbursement of employee business expenses).

claim under the IWPCL for improper deductions from wages.  Thus, because Tegtmeier has only alleged unreimbursed expenses, not deductions from wages, Count VI fails to state a claim and must be dismissed.

### 3.    IWPCL Claim For Uniform Deductions

Count VII of the FAC alleges violations of the IWPCL arising from uniform deductions on behalf of the Non-Supervisory Employee Class.  Tegtmeier alleges that PJ Iowa received no written authorization to deduct his uniform costs and that those costs do not accrue to the benefit of the employee.  PJ Iowa argues that Tegtmeier *did* authorize uniform deductions in writing and attaches to its Motion to Dismiss a photocopy of a form purportedly authorizing deductions of $11 from Tegtmeier's wages for a shirt.  PJ Iowa also argues that Tegtmeier's uniform purchases were for the employee's benefit because "PJ Iowa provides each employee a shirt and hat at no cost, so employee purchases of additional shirts or hats provides a personal convenience."  Def.'s MTD Reply 4.

Even if the Court were to consider the document attached to PJ Iowa's Motion to Dismiss, Tegtmeier nonetheless states a claim for relief under the IWPCL based on uniform deductions.[7]

_____

[7] The parties dispute the propriety of PJ Iowa's attempt to attach this document to its Motion.  Generally, a court considering a motion to dismiss must ignore materials outside the pleadings or that "contradict the complaint."  Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 (8th Cir. 2012).  However, courts may consider documents outside the four corners of the complaint, including materials "integral to the claim" or that are "contemplated by or expressly mentioned in the complaint," where the authenticity of the materials is not questioned.  Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting Miller, 688 F.3d at 931 n.3); see also Ballard v. Nat'l. Football League Players Ass'n., 123 F.Supp.3d 1161, 1165 (E.D. Mo. 2015) ("Where the extraneous documents are central to the plaintiff's case, such as the written contract in a contract dispute, the court may examine the documents in deciding a motion to dismiss.").  As stated above, however, Tegtmeier's claim would still survive if the Court were to consider this document.

Tegtmeier alleges that he purchased a hat, a shirt, and a logoed jacket, and that deductions for these items were taken from his wages without his authorization. The uniform order that PJ Iowa attaches concerns one shirt and is not on its face a blanket authorization to deduct the cost of all uniform items. Thus, Tegtmeier states a claim that PJ Iowa violated Iowa Code § 91A.5 for not obtaining the proper authorization for alleged payroll deductions for uniform items.

**B.      Rule 67 Motion To Deposit Funds**

Rule 67 provides a vehicle for a party to deposit a sum of money with the Court when another party demands a money judgment in a federal court action. Fed. R. Civ. P. 67(a). This rule is a "procedural device . . . intended to provide a place for safekeeping for disputed funds pending resolution of a legal dispute." Brady v. Basic Research, L.L.C., 312 F.R.D. 304, 306 (E.D.N.Y. 2016) (alteration in original) (quoting Ray Legal Consulting Grp. v. DiJoseph, III, 37 F.Supp.3d 704, 729 (S.D.N.Y. 2014)). Rule 67 does not effect "a legal transfer of property between the litigants." Prudential Ins. Co. of Am. v. BMC Indus., Inc., 630 F. Supp. 1298, 1300 (S.D.N.Y. 1986); see also Brady, 312 F.R.D. at 306 (noting that Rule 67 is not a means of altering the contractual relationships and legal duties of the parties). Instead, the "core purpose" of Rule 67 is "to relieve a party who holds a contested fund from responsibility for disbursement of that fund among those claiming some entitlement thereto." Alstom Caribe, Inc. v. George P. Reintjes Co., Inc., 484 F.3d 106, 113 (1st Cir. 2007); see also Baxter v. United Forest Prods. Co., 406 F.2d 1120, 1126 (8th Cir. 1969) (per curiam) ("Rule 67 was intended to apply only to a fund that is in dispute.") It is within the Court's discretion whether to permit a party to deposit funds with the Court under Rule 67. E.g., Zelaya/Capital Int'l Judgment, LLC v. Zelaya, 769 F.3d 1296, 1300 (11th Cir. 2014).

PJ Iowa's intention in requesting to deposit funds appears to be to procure a settlement for Tegtmeier's individual claims despite Tegtmeier's rejection of PJ Iowa's offers. See Def.'s Rule 67 Reply 4 ("Plaintiff would not have a *live* claim should Defendant be permitted to deposit funds in the amount of $6,500.00 with the Court."). Though the Court *may* allow such a deposit, PJ Iowa does not allege that the funds at issue are subject to competing claims. Moreover, a different rule—Rule 68—clearly offers an avenue for PJ Iowa to make a settlement offer to Tegtmeier before the view of the Court, if that is what PJ Iowa wishes to do. Fed. R. Civ. P. 68.

PJ Iowa is likely moving under Rule 67 because of dicta in the recent opinion of the U.S. Supreme Court in Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016). In Gomez, the Court held that an unaccepted settlement offer and offer of judgment under Rule 68 did not moot an individual plaintiff's case where the individual plaintiff sued on behalf of a putative class action under Rule 23 and the case had yet to proceed to class certification. Id. at 669-672. The Supreme Court noted: "We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount." Id. at 672. Thus, PJ Iowa seemingly attempts to deposit funds with the court that it alleges fully satisfies Tegtmeier's claims.

Defendants before other district courts have also sought to use Rule 67 to compel a finding of mootness since Gomez. Every court thus far to confront a Rule 67 motion made for this purpose has denied it. See Bais Yaakov of Spring Valley v. Graduation Source, LLC, __ F.Supp.3d __, 14-cv-3232 (NSR), 2016 WL 872914, at *1 (S.D.N.Y. Mar. 7, 2016) (vacating prior order allowing deposit of funds with the court in advance of class certification); Bais

Yaakov of Spring Valley v. Varitronics, LLC, File No. 14-CV-5008 (ADM/FLN), 2016 WL

806703, at *1 (D. Minn. Mar. 1, 2016) (denying motion for Rule 67 deposit in advance of class

certification stage); Brady, 312 F.R.D. at 306 (same).   These courts have all noted that the

Supreme Court's opinion in Gomez also included language that "a would-be class representative

with a live claim of her own must be accorded a fair opportunity to show that certification is

warranted." Graduation Source, 2016 WL 872914, at *1 (quoting Gomez, 136 S. Ct. at 672);

Varitronics, 2016 WL 806703, at *1 (same); Brady, 312 F.R.D. at 306 (same).   Along those same

lines, the District of Nebraska recently (but prior to Gomez) surveyed Eighth Circuit statements

on the impact of a putative class action on offers of judgment and found that while the Eighth

Circuit "has not ruled squarely on the issue," it has disapproved of efforts to "pick off" individual

plaintiffs in an effort to thwart class certification.   Jenkins v. Pech, 301 F.R.D. 401, 406, 408 (D.

Neb. 2014) (citing Potter v. Norwest Mortg. Inc., 329 F.3d 608, 612 (8th Cir. 2003); Alpern v.

UtiliCorp United, Inc., 84 F.3d 1525, 1539 (8th Cir. 1996)). In rejecting a motion to dismiss an

individual plaintiff's claims for mootness based on a Rule 68 offer of judgment prior to class

certification, the District of Nebraska observed that efforts to "pick off" individual plaintiffs

"frustrat[es] the objectives of class action suits and invit[es] a waste of judicial resources." Id. at

408.

PJ Iowa implies that any party may make a deposit pursuant to Rule 67 as long as the

lawsuit seeks money damages.   But this Court has the discretion to deny leave to deposit funds

with the court where appropriate.   PJ Iowa provides no reason why this Court should issue such

an order: PJ Iowa does not seek "to relieve [itself] of the burden of administering an asset," see

<u>Brady</u>, 312 F.R.D. at 306, nor does it offer any reason why such an order would promote judicial economy.  Thus, the Court denies PJ Iowa's motion.

### VII.  CONCLUSION

For the reasons provided, PJ Iowa's Motion to Dismiss, ECF No. 22, is **granted in part and denied in part**.  It is **granted** as to Count VI and **denied** on all other bases.  PJ Iowa's Rule 67 Motion, ECF No. 32, is **denied**.

**IT IS SO ORDERED.**

Dated this 18th day of May, 2016.

JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT