IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| BRANDON TEGTMEIER, on behalf of himself and others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>PJ Iowa, L.C.<br><br>    Defendant. | No. 3:15-cv-00110 - JEG<br><br><br>**ORDER** |

This matter is before the Court on a Motion for Conditional Collective Action Certification (the Motion) pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §216(b), by Plaintiff Brandon Tegtmeier (Tegtmeier or Plaintiff), on behalf of himself and similarly situated delivery drivers of Defendant PJ Iowa, L.C. (PJ Iowa). PJ Iowa resists. Neither party requested a hearing on the Motion, and the Court finds a hearing is unnecessary. The matter is fully submitted and ready for disposition.

**I.  BACKGROUND**[1]

PJ Iowa operates twenty-six Papa John's franchise stores in Iowa, Illinois, and South Dakota. From January to September 2014, Tegtmeier was employed by PJ Iowa as a delivery driver in Davenport, Iowa. During Tegtmeier's employment, PJ Iowa paid Tegtmeier a cash

---

[1] Upon a motion for conditional certification, the Court is tasked with determining whether a plaintiff has shown "some factual basis beyond the mere averments in their complaint" in support of certification. West v. Border Foods, Inc., Civil No. 05-2525(DWF/RLE), 2006 WL 1892527, at *2 (D. Minn. July 10, 2006) (quoting Frank v. Gold'n Plump Poultry, Inc., No. Civ. 0410118JNERLE, 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005). Thus, the facts set forth in this Order are taken from the limited record provided by the parties on this Motion. However, the Court is not required to issue findings of fact at the conditional certification stage, e.g., id. at *3, and the above discussion does not constitute findings of fact.

wage of $5.50 per hour and applied a tip credit for all of Tegtmeier's work time. On October 15, 2015, Tegtmeier filed a Complaint against PJ Iowa for violation of the FLSA, 29 U.S.C. § 201 *et seq.*, and of Iowa law. Tegtmeier filed an Amended Complaint on December 3, 2015. PJ Iowa moved to dismiss Tegtmeier's state law claims on December 17, 2015, and the Court granted in part and denied in part that motion on May 18, 2016. ECF No. 50.

The Amended Complaint makes three separate FLSA minimum wage claims. Count I alleges that PJ Iowa improperly applied a tip credit to Tegtmeier's and other delivery drivers' wages because PJ Iowa required delivery drivers to spend over 20% of their time performing non-tipped duties. Count II alleges that PJ Iowa reimbursed delivery drivers for vehicle expenses at an unduly low rate, resulting in net wages below the federal minimum wage. Count III alleges that PJ Iowa required delivery drivers to purchase uniforms and driving records at their own expense, also resulting in net wages below the federal minimum wage. Though the Amended Complaint contains three federal claims on behalf of an "opt-in" collective action of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b),[2] the present Motion is narrower. Tegtmeier now moves for conditional certification of a FLSA collective action of PJ Iowa delivery drivers during the applicable limitations period only in pursuit of Count II and the driving record portion of Count III. (ECF Nos. 55-56).[3] Tegtmeier also requests equitable tolling.

    A.    **Vehicle Expense Reimbursement Claims**

---

[2] The one exception is the uniform costs portion of Count III, which was brought on behalf of an opt-in collective action of similarly situated non-supervisory employees.

[3] Tegtmeier has stated that he does not intend to move for collective action certification for the remaining FLSA claims nor for class action certification pursuant to Rule 23 for the extant state law claims. See ECF Nos. 55-56.

Tegtmeier argues that PJ Iowa uses a vehicle expense reimbursement formula that results in wages paid to delivery drivers that fall below the minimum wage. PJ Iowa pays its delivery drivers between $5.50/hour and $8.25/hour, depending on the state. As of February 2016, the bottom of PJ Iowa's pay scale was $5.50/hour in Iowa, $6.00/hour in South Dakota, and $6.25/hour in Illinois, all below the federal minimum wage of $7.25/hour. For employees whose nominal pay falls below the applicable minimum wage rate(s), PJ Iowa uses a tip credit and provides a minimum wage adjustment when tips do not bring a delivery driver's wages up to the minimum wage. All of PJ Iowa's delivery drivers share the same title and written job description, and generally perform the same job duties.

PJ Iowa's delivery drivers incur certain expenses for operating their vehicles on the job. PJ Iowa's written policies require delivery drivers to use their own vehicles to deliver orders, and drivers must ensure that the vehicles are safe and reliable. Drivers' vehicles are subject to inspection, and if a vehicle does not pass inspection, a driver may not operate that vehicle on the job. Drivers are also required to maintain insurance coverage and also incur expenses from fuel and depreciation while operating their vehicles on the job.

PJ Iowa reimburses its delivery drivers for their vehicle expenses by remitting 5% of the net sales of that driver's delivery orders. This net sales figure includes all sales from delivery orders, including when multiple deliveries are made on a single trip and also including unsuccessful deliveries, but after accounting for any discounts or coupons used by the customer. PJ Iowa records neither the actual miles traveled by its delivery drivers nor its delivery drivers' actual vehicle expenses, and it does not require its delivery drivers to record these figures. PJ Iowa does, however, track the actual reimbursement amounts remitted to drivers each shift and

reimburses delivery drivers in cash at the end of each shift. This vehicle reimbursement policy applies to all of PJ Iowa's delivery drivers, and has since at least 1997.

Though PJ Iowa does not track its delivery drivers' miles traveled during deliveries, Tegtmeier has attempted to calculate the effect of PJ Iowa's vehicle expense reimbursement policy on delivery drivers' wages based on certain deposition testimony from PJ Iowa's Rule 30(b)(6) witness, Mark Hauder. Hauder testified that the average price per order at PJ Iowa over the last three years was around $20, though that figure would be higher if only delivery orders were taken into account. Using this information, Tegtmeier estimates that PJ Iowa delivery drivers would expect to receive $1.00 per delivery, on average. Though Hauder said he did not know the average distance for PJ Iowa's deliveries, he testified that PJ Iowa's stores typically have a maximum delivery zone within a two- to three-mile radius from the store, or a distance that can be reached in a 12- or 13-minute trip.

Tegtmeier's expert, Paul Lauria, uses these figures to compare PJ Iowa's estimated per-delivery vehicle reimbursement with estimated expense figures for delivery drivers. Lauria compares PJ Iowa's reimbursement policy with the Internal Revenue Service (IRS) Standard Mileage Rate—$0.560 per mile in 2014—which in Lauria's opinion best approximates employees' actual vehicle expenses. Lauria estimates the average vehicle reimbursement on a per mile basis using an average delivery distance of five miles, an assumption based on "the national average round-trip distance driven for deliveries of pizzas and other food products by the major pizza companies" as discerned by "[his] work as an expert witness on other cases like this one." Lauria Prelim. Expert Report at 16, Ex. 12 to Tegtmeier Br., ECF No. 38-15. Lauria estimates a $1.80 shortfall per delivery between PJ Iowa's reimbursement policy (using

Tegtmeier's estimated per-delivery reimbursement figure) and application of the IRS Standard Mileage Rate in 2015. Lauria also proffers an estimate of actual per-mile vehicle expenses for the average pizza delivery driver, using industry estimates for vehicle capital costs, maintenance and repair costs, fuel costs, insurance costs, and registration costs. Lauria estimates an average rate of vehicle expenses of $0.47 per mile in 2014, leading to an estimated $1.35 of unreimbursed expenses per delivery under PJ Iowa's reimbursement policy, again assuming an estimated five miles per delivery and estimated $1.00 reimbursement per delivery. After comparing PJ Iowa's reimbursements to these alternative measures of vehicle expenses, Lauria concludes that PJ Iowa's reimbursements are unreasonably low.

Tegtmeier compares his personal reimbursement amounts to the IRS Standard Mileage Rate. In his brief supporting the Motion, Tegtmeier claims that he personally received only $0.15 per mile in reimbursements based on the data provided by PJ Iowa regarding Tegtmeier's shifts.[4] Tegtmeier claims that he received $1.70 less per delivery than he would have received had he been reimbursed using the IRS Standard Mileage Rate.[5] While employed by PJ Iowa, Tegtmeier made $5.50 per hour, plus tips. According to Tegtmeier, this alleged under-

---

[4] To calculate this mileage figure, Tegtmeier takes the sum of the vehicle reimbursements in his personal Team Member Checkout Report, provided as Exhibit 11 to the Motion, and divides that total reimbursement figure by a figure that apparently represents the sum total of the distances between the delivery addresses listed on the Team Member Checkout Report when entered into Google Maps. It is unclear whether this miles-driven denominator includes all deliveries listed in the Team Member Checkout Report or all deliveries for which Tegtmeier received a reimbursement. Tegtmeier reported no miles driven (and thus received no reimbursement) on over half of his shifts. PJ Iowa believes that Tegtmeier received no vehicle reimbursements for these shifts because Tegtmeier mistakenly indicated he was driving a company car when he clocked in for those shifts.

[5] Using data gleaned from Tegtmeier's Team Member Checkout Report and Google Maps, Tegtmeier estimates an average 4.15 miles traveled per delivery.

reimbursement of vehicle expenses, whether compared against the IRS Standard Mileage Rate, or a lower rate such as Lauria's estimate, reduces his and other drivers' wages below the minimum wage, after application of the tip credit. Tegtmeier did not track his actual vehicle expenses while he was employed by PJ Iowa, and during that time he drove two different vehicles on the job: a 2002 Ford Windstar minivan and a 2006 Toyota Corolla compact car.

The Court notes that the Amended Complaint contains contrary allegations regarding PJ Iowa's reimbursement policy. In the Amended Complaint, Tegtmeier alleges that PJ Iowa's policy is to reimburse drivers for vehicle expenses at the rate of $5.00 per shift. Then, after PJ Iowa submitted interrogatory responses on January 22, 2016, stating that its policy was actually to reimburse drivers for vehicle expenses based on 5% of net sales of deliveries, Tegtmeier stated in his deposition on February 25, 2016, that he received about $5 per shift in vehicle expense reimbursements, but never more. When shown records from PJ Iowa purporting to tally his actual amounts reimbursed, amounts greater than $5.00 per shift, Tegtmeier claimed that based on his memory any such records would be inaccurate, though he stated that he did not personally know how PJ Iowa calculated vehicle reimbursements for delivery drivers. The following day, February 26, 2016, Hauder stated in his Rule 30(b)(6) deposition that PJ Iowa's reimbursement policy is to reimburse drivers based on 5% of net sales of deliveries. Tegtmeier now relies on this testimony (as well as PJ Iowa's interrogatory response), rather than his prior allegations, in submitting this Motion. Tegtmeier's position now is that PJ Iowa's policy is to reimburse drivers based on 5% of net sales of deliveries, not $5 per shift, and that the allegations in the Amended Complaint were not accurate because PJ Iowa had not yet disclosed its policy.

    B.      **Driving Record Claims**

PJ Iowa requires applicants for a delivery driver position to provide PJ Iowa with a copy of their Motor Vehicle Record at the time of their interview. Tegtmeier alleges that it cost him $25 to provide his driving record to PJ Iowa, and that because he was paid the minimum wage, this cost reduced his net pay below the minimum wage. Tegtmeier argues that this policy applies to all of PJ Iowa's delivery drivers.

## II. DISCUSSION

### A. Standard for Conditional FLSA Collective Action Certification

Section 216(b) of the FLSA provides that a plaintiff may maintain an action to recover for violations of the FLSA on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id. Such actions on behalf of similarly situated employees are known as collective actions; and § 216(b)'s opt-in requirement makes a FLSA collective action unlike an opt-out class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Perrin v. Papa John's Intern., Inc., No. 4:09CV01335AGF, 2011 WL 4089251, at *2 & n.7 (E.D. Mo. Sept. 14, 2011).

Courts in this Circuit typically engage in a two stage analysis when a plaintiff seeks to certify a FLSA collective action pursuant to § 216(b). Putman v. Galaxy 1 Mktg., Inc., 276 F.R.D. 264, 269 (S.D. Iowa 2011). In the first stage, also known as the "notice stage," the Court considers at an early point in the litigation whether to conditionally certify the opt-in collective action. Robinson v. Tyson Foods, Inc., 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting Dietrich v. Liberty Square, L.L.C., 230 F.R.D. 574, 577 (N.D. Iowa 2005)). "Once the Court conditionally

7

certifies the class, potential class members are given notice and the opportunity to opt in." Fast v. Applebee's Int'l, Inc., 243 F.R.D. 360, 363 (W.D. Mo. 2007) (internal quotation marks omitted). "To establish that conditional certification is appropriate, the plaintiff[] must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" Robinson, 254 F.R.D. at 99 (internal citations and quotation marks omitted); see also Bouaphakeo v. Tyson Foods, Inc., 564 F. Supp. 2d 870, 896 (N.D. Iowa 2008) (plaintiff must provide "evidence that other similarly situated individuals desire to opt in to the litigation") (quoting Parker v. Rowland Exp., Inc., 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007)). This is a lenient standard, but the plaintiff nevertheless bears the burden, and "more than mere allegations" are required. Robinson, 254 F.R.D. at 99 (quoting Bouaphakeo, 564 F. Supp. 2d at 892). The plaintiff can generally meet this burden by showing that "the putative class members were together the victims of a single decision, policy, or plan." Id. at 99-100 (quoting Bouaphakeo, 564 F. Supp. 2d at 892). The Court need not "make any findings of facts with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations with respect to the evidence presented," but "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." Andersen v. Wells Fargo Fin., Inc., No. 4:11-cv-00085, 2012 WL 12871958, at *3 (S.D. Iowa Feb. 6, 2012) (quoting West v. Border Foods, Inc., Civil No. 05-2525(DWF/RLE), 2006 WL 1892527, at *3 (D. Minn. June 12, 2006)).

    In the second stage, the Court determines definitively whether the named plaintiff is similarly situated with the other plaintiffs who have opted in. Bouaphakeo, 564 F. Supp. 2d at 892. This analysis is usually triggered by a defendant's motion to decertify when discovery is

complete or nearly complete. Id. Though the plaintiff need not show that the opt-in plaintiffs are "identically situated," the plaintiff still bears the burden at this stage, and it is heavier than at the notice stage. Id. (quoting Fast, 243 F.R.D. at 363). At this stage, "the court conducts a fact intensive inquiry of several factors, including: (1) the extent and consequence of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." West, 2006 WL 1892527, at *3 (quoting Frank, 2005 WL 2240336, at *2); see also Perrin, 2011 WL 4089251, at *3 ("[C]ourts conduct a more stringent inquiry exploring several factors, including the extent and consequences of the differing circumstances available to individual plaintiffs, available defenses and the extent to which they are unique to each individual plaintiff, and other fairness and procedural considerations.").

Nevertheless, the question of whether to certify a FLSA collective action lies with the discretion of the district court, and the Court may also vary from the above analysis at its discretion. Bouaphakeo, 564 F. Supp. 2d at 891. Here, the Court finds application of the two stage analysis to be appropriate and will proceed on that basis.

**B.      Conditional Certification Analysis**

**1. Vehicle Expense Reimbursement Claim**

Tegtmeier argues that conditional certification is appropriate because he has shown, based on testimony from PJ Iowa's Rule 30(b)(6) witness and interrogatory responses, that PJ Iowa's reimbursement policy applies to all of its delivery drivers. That policy reimburses delivery drivers based on five percent of the net sales from deliveries. Tegtmeier argues that this policy under-reimburses the actual vehicle expenses of all delivery drivers, and because delivery drivers

are paid at or near the federal minimum wage (inclusive of the tip credit), their actual wages are below the federal minimum wage.

Tegtmeier has provided "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." See Robinson, 254 F.R.D. at 99 (quoting Dietrich, 230 F.R.D. at 577). All potential plaintiffs appear to have been subject to the same vehicle expense reimbursement policy. This suffices at the conditional certification stage. Andersen, 2012 WL 12871958, at *2 ("[C]onditional certification in the first step requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.") (quoting Robinson, 254 F.R.D. at 99-100). Questions regarding the effect of this policy lie at the center of Tegtmeier's vehicle expense reimbursement minimum wage claims, and thus it would be appropriate to send notice to other potential plaintiffs who were subject to this policy.

PJ Iowa makes a number of arguments in opposition. First, PJ Iowa argues that Tegtmeier has not shown that other potential plaintiffs are similarly situated *to Tegtmeier* due to Tegtmeier's prior statements regarding PJ Iowa's policy. Tegtmeier stated in his deposition that he received $5 per shift, and that any records showing otherwise would be inaccurate. If Tegtmeier were actually subject to a reimbursement policy that was different from the policy that applied to all other drivers, then those drivers would not be similarly situated to Tegtmeier. However, while this Court need not make findings of fact at the conditional certification stage, see Andersen, 2012 WL 12871956 at *3, there does not appear to be a genuine factual dispute. PJ Iowa does not argue that Tegtmeier was in fact subject to a divergent vehicle reimbursement policy   it just argues that Tegtmeier asserted so previously. PJ Iowa and Tegtmeier both

acknowledge that Tegtmeier articulates a different understanding of PJ Iowa's policy in the Motion compared to Tegtmeier's position at his deposition or as alleged in the Amended Complaint. Adair v. Wis. Bell, Inc., No. 08-C-280, 2008 WL 4224360, (E.D. Wis. Sept. 11, 2008), cited by PJ Iowa, is not applicable. In Adair, as in this case, the plaintiffs' theory of FLSA liability changed as the Plaintiffs' learned about relevant employer policies during discovery. Id. at *5. But in Adair, unlike in this case, the plaintiffs' liability theory on motion for class certification turned on "no more than a misunderstanding on the part of a few employees," not a broadly applicable company policy. Id.

PJ Iowa also argues that Tegtmeier is not similarly situated to other PJ Iowa delivery drivers because PJ Iowa's records show that Tegtmeier received no vehicle expense reimbursement for a large number of his deliveries. PJ Iowa says that it believes Tegtmeier received no reimbursement for these shifts due to an error on his part while clocking in. This is an argument better addressed for a later stage in this litigation. Tegtmeier has not argued in this case that PJ Iowa failed to pay him the minimum wage because Tegtmeier received zero reimbursements for certain shifts. Rather, Tegtmeier argues that PJ Iowa under-reimburses delivery drivers for their vehicle expenses based on a reimbursement policy whose rate is set too low. Whether, upon greater scrutiny, these no-reimbursement shifts render Tegtmeier's personal "factual and employment setting[]" unduly distinct from other delivery drivers is not a question for the Court to address at this time. See Bouaphakeo, 564 F. Supp. 2d at 892.

PJ Iowa also argues that its vehicle reimbursement formula is inherently variable because the amounts reimbursed fluctuate based on the amount of sales. Because different drivers receive different reimbursement amounts on a day to day basis, and even the same driver receives

different amounts on a shift to shift basis under PJ Iowa's formula, PJ Iowa argues that whether each delivery driver received the minimum wage is an individualized question inappropriate for resolution in a collective action. PJ Iowa argues that the pizza delivery cases cited by Tegtmeier involved reimbursement policies by which delivery drivers were reimbursed on a per-order or a per-delivery basis. But even the reimbursement policy that PJ Iowa characterizes as a flat rate in Bellaspica v. PJPA, LLC, 3 F. Supp. 3d 257 (E.D. Pa. 2014), for example, was itself inherently variable. Though delivery drivers were paid a flat $1.00 per delivery, id. at 259, the number of deliveries per shift could vary on a driver-by-driver and shift-by-shift basis, based on a number of factors. The plaintiff estimated that drivers traveled an average of 5 to 10 miles per delivery, and thus were reimbursed 10 to 20 cents per mile. Id. The district court held that the plaintiff had sufficiently shown that he and the proposed opt-in plaintiffs were similarly situated for the purposes of conditional certification. Id. at 259-60. These average figures — which themselves contained significant ranges, 20 cents per mile being double the reimbursement rate of 10 cents per mile — would naturally have obscured significant variability on a delivery-to-delivery, shift-to-shift, or workweek-to-workweek basis despite the "flat rate" nature of the vehicle reimbursement. But this inherent variability did not mean that the putative plaintiffs were not similarly situated with the Bellaspica named plaintiff — at least not at the conditional certification stage. Nor does the inherent variability of PJ Iowa's reimbursement formula defeat certification here, where Tegtmeier has shown that the same policy applies to all PJ Iowa delivery drivers. In other words, the "variability" of delivery drivers' reimbursements on a delivery-by-delivery or shift-by-shift basis does not necessarily speak to the variability of reimbursements *between* and among delivery drivers (as compared to their expenses). This second form of variability is much

more relevant in determining whether various delivery drivers are similarly situated, but nothing inherent in PJ Iowa's reimbursement formula helps reveal this second type of variability.

PJ Iowa also argues that the inherent variability of each driver's vehicle expenses defeats collective action treatment, as each driver's expenses may differ depending on the particular delivery routes taken and vehicles used by each driver. PJ Iowa notes that Tegtmeier himself used two different vehicles to make deliveries during his time at PJ Iowa and conceded that his expenses differed accordingly. It seems plain that Tegtmeier and other PJ Iowa's delivery drivers will not have incurred equal expenses, even on a rate basis. But that is not the relevant standard. See, e.g., Bouaphakeo, 564 F. Supp. 2d at 892 ("[T]he plaintiff need not show that opt in plaintiffs are 'identically situated.'") (quoting Fast, 243 F.R.D. at 363). At the conditional certification stage, the Court simply does not have the information before it with which it could decide whether the variability in vehicle expenses between delivery drivers is so significant as to make collective action treatment of Tegtmeier's claims impracticable. But the Court is able to determine that Tegtmeier has "met [his] burden, at least at this stage of the litigation, of demonstrating a 'single decision, policy, or plan.'" See Putman, 276 F.R.D. at 274. Thus, the Court finds that Tegtmeier has met the minimal burden to conditionally certify the proposed collective action.

### 2. Driving Record Claim

Tegtmeier also seeks conditional collective action certification for his claim that PJ Iowa violated the FLSA's minimum wage provisions by requiring delivery drivers to submit their driving record as a condition of employment. Tegtmeier argues that because delivery drivers must pay to obtain copies of their driving records and are not reimbursed for those costs, their

wages were below the minimum wage. Tegtmeier argues that this policy applies to all delivery drivers.

PJ Iowa argues that Tegtmeier must show not only that putative collective action plaintiffs were subject to a common policy but also that the common policy violated the law, and that Tegtmeier has failed to overcome his burden with respect to the latter. PJ Iowa argues that costs incurred by an employee prior to employment do not enter into a minimum wage calculation under the FLSA; and in this case, delivery drivers had no employment relationship with PJ Iowa, not even an offer of employment, when they purchased their driving records. Thus, PJ Iowa argues, Tegtmeier fails to allege a colorable FLSA violation, and collective action treatment of this claim would be inappropriate. In response, Tegtmeier argues that employers must reimburse certain pre-employment expenses to the point that wages are at least equivalent to the minimum wage, so PJ Iowa still should have reimbursed its delivery drivers for their driving record purchases.

PJ Iowa cites the following language from Carden v. Scholastic Book Clubs, Inc., No. 2:10-cv-01112-NKL, 2011 WL 2680769 (W.D. Mo. July 8, 2011): "[P]laintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. *3 (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)). This same language is common in the FLSA collective action case law, including in this District. See, e.g., Putman, 267 F.R.D. at 269, 273. PJ Iowa implies that this means Tegtmeier has a burden at the conditional certification stage to "establish a colorable basis" that PJ Iowa's policy violated the FLSA. PJ Iowa Opp. Br. at 14, ECF No. 43. The Court must disagree. The only "modest

factual showing" a plaintiff must make at the certification stage is that other potential plaintiffs are similarly situated with respect to the alleged FLSA violation(s). A plaintiff need not marshal facts in support of the merits of its claims. Many of the opinions that recite the language that PJ Iowa cites make clear that the Court need not address merits questions upon a motion for certification. See Putman, 276 F.R.D. at 273-74 ("The Court need not determine, at this stage in the proceeding, whether the satellite installation technicians were improperly classified as independent contractors, rather than employees.") (citing Bouaphakeo, 564 F. Supp. 2d at 893 ("[P]laintiffs need not prove the merits of their claim. That is, plaintiffs do not have to show that the employer actually violated the FLSA.")).[6] The district court in Bouaphakeo went so far as to say that it would be "unreasonable to require actual proof on the merits of the plaintiffs' claims at the certification stage." 564 F. Supp. 2d at 893 n.19.

Nevertheless, the Court retains considerable discretion to manage the instant proceedings.[7]

---

[6] In fact, the above-quoted language originates in an opinion from the Southern District of New York, in which then-Judge Sotomayor explicitly states that "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997).

[7] The procedural certification of a FLSA collective action is not mandated by statute or rule as Rule 23 governs ordinary opt-out class actions; instead, courts have imposed these structures to help ensure that plaintiffs who opt in to the litigation are "similarly situated" pursuant to § 216(b) and to facilitate notice to those plaintiffs. As the Second Circuit has explained,

> [I]t is important to stress that the "certification" we refer to here is only the district court's exercise of the discretionary power, upheld in Hoffmann La Roche[ Inc v. Sperling Co., 493 U.S. 165 (1989)], to facilitate the sending of notice to potential class members. Section 216(b) does not by its terms require any such device, and nothing in the text of the statute prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice described in Hoffmann La Roche has not been sent, so long as such plaintiffs are "similarly situated" to the named individual plaintiff who brought the action. See Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir.2008) (noting that "certification" of a collective action is a device to facilitate notice to potential class

15

This includes the ability to decline to certify a collective action and to facilitate notice to potential plaintiffs if it appears to the Court that "a plaintiff's claim [is] meritless or completely deficient," such that bringing together additional potential plaintiffs would be unreasonable. Bouaphakeo, 564 F. Supp. 2d at 893 n.19.  Needless to say, and precisely because a motion for certification does *not* call for the Court to give an opinion on the merits of the case, those instances should be rare.  This case does not present such an instance.  There is some point at which certain expenses for "tools of the trade" incurred by an employee, at an employer's direction but prior to employment, must be reimbursed.  See Castellanos-Contreras v. Decatur Hotels, LLC, 622 F.3d 393, 400-01 (5th Cir. 2010) (en banc) (rejecting an argument that the pre-employment immigration expenses in that case required reimbursement); Arriaga v. Fla. Pac. Farms, L.L.C., 305 F.3d 1228, 1237 (11th Cir. 2002) ("Workers must be reimbursed during the first workweek for pre-employment expenses which primarily benefit the employer, to the point that wages are at least equivalent to the minimum wage.").  Tegtmeier argues that requiring delivery drivers to procure a copy of their driving record at their own expense is the sort of expense that must be reimbursed; PJ Iowa disagrees.  The Court is not prepared, based on the current record and minimal briefing, to declare this claim to be meritless or completely deficient. Thus, conditional certification is supported.

    **C.**    **Notice to Potential Plaintiffs**

---

    members and does not actually "create a class of plaintiffs" for a FLSA collective action). Thus "certification" is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful "case management" tool for district courts to employ in "appropriate cases." Hoffmann La Roche, 493 U.S. at 169, 174, 110 S.Ct. 482.

Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).

Tegtmeier requests the Court approve the proposed Notice of Collective Action Lawsuit (the Notice), ECF No. 38-38, and Plaintiff Consent Form (the Consent Form), ECF No. 38-39, attached to the motion for certification. PJ Iowa raises a number of objections.

As mentioned above, this Court has the authority to facilitate notice to potential plaintiffs in a collective action. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-72 (1989). The efficiency benefits of collective action litigation "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Id. at 170. Approving notice before it is sent (and resolving any disputes concerning the notice's contents or form) helps a court "ensure that [the notice] is timely, accurate, and informative." Id. at 172. District courts have discretion in facilitating such notice. Id. at 169-70.

PJ Iowa objects to the Notice as inaccurate and incomplete. Specifically, PJ Iowa objects to the use of the phrases "Class" or "Class Member" in the Notice because this case is a FLSA collective action, not a Rule 23 class action. The Court finds that the use of the term "Class" in the Notice is not misleading, as it is clear from the Notice that potential plaintiffs must opt in to participate in the litigation. PJ Iowa also objects to the statement that the instant lawsuit "may affect your rights," which appears in large, bold font on the top of the first page, with similar language also appearing under Question 1 on page 2. The Court notes that this type of language appears in notices used in other collective action cases, including in this District. See Ex. A to Mot. to Issue Notice to Similarly Situated Persons (Proposed Notice), at 1, Putman, No. 3:10-cv-00072-JAJ-RAW (S.D. Iowa Mar. 22, 2011), ECF No. 57-2 at 4 (authorized in part by Putman, 276 F.R.D. at 277-78). The challenged text is literally accurate, and other text on the first page

17

of the Notice makes clear that the lawsuit will not affect the employee's rights if the employee does nothing.

PJ Iowa points out that the Notice states that depositions take place in "Davenport, Missouri." Assuming that is a scrivener's error, Tegtmeier is directed to replace "Missouri" with "Iowa." The Court finds no other issue with informing potential plaintiffs that depositions may take place in Davenport, where this case was filed.[8] The Court also finds no issue with the remaining omissions contested by PJ Iowa.

PJ Iowa also argues that the Notice, as proposed, implies judicial endorsement. The Court does not find that the header of the Notice containing the name of the Court implies judicial endorsement of the merits of the action. This Court has previously approved collective action notices bearing a header containing the name of the Court, and such a header helps to identify this notice as distinct from solicitation from a lawyer or junk mail. See Putman, 276 F.R.D. at 276-77 (approving notice document containing full case caption at the top of the first page). Similarly, the references to federal court approval of the Notice are not misleading, as there are also numerous statements that the Court is not expressing an opinion on the merits of the case.

PJ Iowa argues that the Notice improperly encourages interaction with Tegtmeier's counsel via phone and email. PJ Iowa cites two orders from another district court prohibiting any communication between named plaintiffs' counsel and potential opt-in collective action members, but neither those cases nor PJ Iowa provide a reason why this Court must prohibit potential opt-in members from having questions answered by Plaintiff's counsel. See Hipp. v.

---

[8] Accordingly, Tegtmeier is directed to correct the heading of the Notice so it reflects that this case was filed in the Davenport Division of this Court. The Court also directs Tegtmeier to closely review the Notice to ensure that it is free of any other scrivener's errors.

Liberty Nat'l Life Ins. Co., 164 F.R.D. 574, 576 (M.D. Fla. 1996); Harrison v. Enterprise Rent-A-Car Co., 1988 WL 422169, at *4 (M.D. Fla. July 1, 1998).  This Court has previously authorized collective action notices containing contact information for plaintiffs' lawyers, e.g., Ex. A to Mot. to Issue Notice to Similarly Situated Persons (Proposed Notice), at 1, Putman, No. 3:10-cv-00072-JAJ-RAW, ECF No. 57-2 at 4, and the Federal Judicial Center's notice templates for employment discrimination class actions also anticipates listing the plaintiffs' lawyers' contact information.  Federal Judicial Center, Employment Discrimination Class Action Certificaiton: Full Notice, at 8, http://www.fjc.gov/public/pdf.nsf/lookup/ClaAct11.pdf/$file/ClaAct11.pdf (last visited Sept. 20, 2016).  The Court will therefore decline to order counsel's contact information to be stricken from the Notice.

    PJ Iowa also objects to Tegtmeier's request for an order to produce the dates of birth of potential plaintiffs.  PJ Iowa argues that Tegtmeier provided no rationale for producing that kind of personally identifying data, and Tegtmeier did not respond on reply.  The Court agrees with PJ Iowa that production of birth dates does not appear to be necessary.  If potential plaintiffs cannot be located via their mailing address, the parties should meet and confer regarding what further information should be shared to locate potential plaintiffs.

    Finally, PJ Iowa objects to Tegtmeier's proposed 90-day opt-in period and proposes a 60-day period instead.  As in Perrin, "this Court sees no need for such an extended period in this case  60 days is sufficient time to notify putative class members and allow them to decide whether to opt-in." 2011 WL 1363988, at *5.

### III. CONCLUSION

    For the reasons provided, it is ordered that:

1. Tegtmeier's Motion for Conditional Collective Action Certification, ECF No. 38, is **granted** consistent with the provisions of this Order.

2. Notice of pendency of this action shall be sent to all individuals who worked for PJ Iowa as a delivery driver between October 13, 2012, and the present.

3. The Notice, ECF No. 38-38, and Consent Form, ECF No. 38-39, as set forth in exhibits to the Motion are **approved**, with the exception of the changes ordered above.

4. PJ Iowa shall have until **14 days** following this Order to provide Plaintiff's counsel the names, last known addresses, dates of employment, and the location and store number of the store at which each potential collective action member works or worked.

5. Plaintiff's counsel shall have **10 days** from receipt of the information listed above to circulate the Notice and Consent Form via U.S. Mail.

6. Putative opt-in plaintiffs shall have **60 days** from the circulation of the Notice and Consent Form in which to opt in to this action.

7. The statute of limitations will be equitably tolled for potential opt-in plaintiffs from March 23, 2016, until the 60-day notice period begins to run.

**IT IS SO ORDERED.**

Dated this 21st day of September, 2016.

_JAMES E. GRITZNER, Senior Judge_
U.S. DISTRICT COURT